## ATTACHMENT A – STATEMENT OF FACTS: GARY CALLIS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On November 30, 2009, the Federal Bureau of Investigations (FBI) San Diego Field Office conducted an undercover operation using a peer-to-peer (P2P) file sharing program. From a user later determined to be defendant **GARY CALLIS**, an undercover agent (UC) downloaded more than 20 images and six videos containing visual depictions of minors engaging in sexually explicit conduct, constituting child pornography under 18 U.S.C. § 2256(8). One of those videos **CALLIS** made available was entitled "boys_fucking5b," which depicted two naked prepubescent males that appear to be engaged in anal sex.

On December 8, 2009, FBI Richmond conducted an independent undercover investigation using a P2P file-sharing program. A UC engaged an individual later determined to be **CALLIS** in a chat, during which **CALLIS** stated he was "looking forward to trading," and that he was "always adding more" for download. **CALLIS** also told the UC that he "had some boy relations," with boys aged six to 14 and that he was presently looking for 14 to 20 year old boys. **CALLIS** further explained that he molested his girlfriend's son, beginning when the boy was six years old until the boy was 12, including fondling and showering with the boy. **CALLIS** also tried to perform oral sex on the boy, but was unsuccessful because the boy, aged seven at the time, was too young. Following the chat, the UC was able to download more than 398 images containing visual depictions of minors engaging in sexually explicit conduct, constituting child pornography under 18 U.S.C. § 2256(8). One of the images **CALLIS** made available and the UC downloaded was "tivo_50.jpg," which depicted an adult male performing oral sex on a prepubescent male. In another image, "1941X.jpg," two naked prepubescent males are touching an naked adult male's penis. The tongues of the prepubescent males are sticking out and are close to the adult male's penis. The adult male is touching one of the prepubescent male's penis.

On February 26, 2010, FBI Agents and other law enforcement officers executed a search warrant at **CALLIS**'s residence located at 423 Belton Road, Silver Spring, Maryland 20901, where **CALLIS** had conducted all the aforementioned internet activity. The following digital media were seized from the residence and later found to contain child pornography:

- Seagate External Hard drive S/N 3PM1ZF8L
- Maxtor External Hard drive S/N A81WXGWE
- IOMega External hard drive S/N TJA9221B82
- Dell Inspiron Laptop, Service Tag 1BSY571
- Dell XPS Laptop, Service Tag 4652QC1
- Dell Dimension 8100 tower JZDZL01; and
- SanDisk Card, blue with ATP lettering, 1 GB.

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

NOV 2 3 2011

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

**CALLIS** was present during the execution of the search warrant and voluntarily agreed to be interviewed. **CALLIS** told investigators that he began viewing child pornography 12 years ago. He has over 100,000 images and/or videos of child pornography saved. For the six or seven months prior to the search warrant, he had been using a publicly-available P2P file sharing program to trade child pornography images and videos. For the prior five or six months, he paid for a yearly subscription to utilize extra features within the P2P file-sharing program. **CALLIS** verified that he used the username identified by the UC during the P2P chats and downloads. **CALLIS** also stated he prefers images of boys ages 12 to 18, but has images of both boys and girls ranging in age from one to 18. **CALLIS** keeps the images and videos that are not of his preference so he can trade them with others. **CALLIS** indicated that he spends approximately 30 minutes every day viewing child pornography. **CALLIS** has burned some of the child pornography images and/or videos to CDs and has printed some of the images, although he thought he destroyed all of the printed pictures.

**CALLIS** further admitted that around 2003, he began dating a female who had a seven-year old son, B.D. A few months after they began dating, the minor male stayed the night at **CALLIS'** residence. **CALLIS** and the minor male washed each other in the shower. After the shower, in **CALLIS'** upstairs bedroom, **CALLIS** touched the minor male's penis and buttocks with his hands and the minor male touched **CALLIS'** penis with his hands. **CALLIS** put his mouth on the minor male's penis and believes the minor male's penis was erect. The minor male put his mouth around **CALLIS'** penis and **CALLIS** believed he was also erect. **CALLIS** and the minor male washed each other in the shower approximately four or five times, however, only attempted oral sex the one time, according to **CALLIS**.

**CALLIS** also told investigators that, in 2000, his 15- or 16-year old male neighbor, D.W., came over to **CALLIS'** house. The neighbor fell asleep on **CALLIS'** couch. **CALLIS** then molested D.W.'s genitals through his clothing as D.W. purportedly slept. **CALLIS** later told the minor male what happened and the minor male subsequently told his mother. The mother confronted **CALLIS** and they agreed that **CALLIS** would not see the minor male anymore.

FBI later performed forensic analyses upon **CALLIS**'s electronic devices, which revealed an expansive collection of images and movies portraying the sexual abuse of children. In total, **CALLIS** had over 866,000 images and 8,100 movies. A forensic agent sampled these contents and found them to consistently contain depictions of youths in various states of undress and/or engaged in sexual activities by themselves, with other children or with adults. Content of the images, included but was not limited the penetration, masturbation, and oral stimulation of children. The collection was highly organized, divided into folders titled with a letter or number, and then further subdivided by a child's name or a description of the contents. The computer also had saved over 1,000 bookmarks to sites that contained young male models or young males involved in sexual activities.

**CALLIS**'s computers also revealed that his primary means of trading child pornography was the peer-to-peer network where the UC officers discovered **CALLIS**. Within that software program, **CALLIS** was a highly-organized trader, dividing his files into certain sub-directories: "General

Shares," "Beginning Trades," "Good Trades," "Better Trades," and Excellent Trades." Within his download directory, **CALLIS** again organized the images by age group, with folders marked "10 YO," "11 YO," and up. The forensic examiner also confirmed that **CALLIS** possessed the files that were originally downloaded by the undercover officers from **CALLIS**'s computer.

The images and videos possessed by **CALLIS** depict real children and were transported o the Internet through interstate and foreign commerce.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_11-30-11_
Date

_Gary A. Callis_ (signature)
Gary A. Callis